IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY LEE, | ◊ | |
| | ◊ | |
| Petitioner, | ◊ | |
| | ◊ | |
| VS. | ◊ | No. 06-1058-T/An |
| | ◊ | |
| STEPHEN DOTSON, | ◊ | |
| | ◊ | |
| Respondent. | ◊ | |

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Bobby Lee, Tennessee Department of Correction prisoner number 133347,

an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a

petition pursuant to 28 U.S.C. § 2254 on March 21, 2006, along with a legal memorandum.

Petitioner paid the habeas filing fee.  The Clerk shall record the respondent as WCF warden

Stephen Dotson.

I.     STATE COURT PROCEDURAL HISTORY

Following a jury trial in the Obion County Circuit Court, Lee was convicted on July

29, 2003 of attempted first degree murder and aggravated assault.  The offenses were merged

and, on September 5, 2003, Lee was sentenced to 60 years imprisonment as a career offender.

The Tennessee Court of Criminal Appeals affirmed.  State v. Lee, No. W2003-02948-CCA-

R3-CD, 2004 WL 1813233 (Tenn. Crim. App. Aug. 11, 2004).

Lee filed a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122, in the Obion County Circuit Court on or about November 2, 2004.  Counsel was appointed to represent Lee, and the postconviction court conducted an evidentiary hearing on January 5, 2005 and issued an order denying the petition on January 10, 2005.  The Tennessee Court of Criminal Appeals affirmed.  Lee v. State, No. W2005-00188-CCA-R3-PC, 2005 WL 2464680 (Tenn. Crim. App. Oct. 5, 2005), *perm. app. denied* (Tenn. Dec. 19, 2005).

II.     PETITIONER'S FEDERAL HABEAS CLAIMS

In this federal habeas petition, Lee raises the following issues:

1.      Whether the jury venire was unconstitutionally impaneled by failing to include adequate representation of African-Americans; and

2.      Whether he received ineffective assistance of counsel, in violation of the Sixth Amendment.

III.    ANALYSIS

A.      Waiver and Procedural Default

Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)     the applicant has exhausted the remedies available in the courts of the State;  or
        (B)     (i)     there is an absence of available State corrective process; or
                (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

2

>    (2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254.  E.g., Granberry v. Greer, 481 U.S. 129, 133-34 (1987); Rose v. Lundy, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing § 2254 Cases.  A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure.  28 U.S.C. § 2254(c); Preiser v. Rodriguez, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him.  Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).  "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief."  Gray v. Netherland, 518 U.S. 152, 162-63 (1996).  "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'"  Id. at 163 (quoting Picard, 404 U.S. at 278).  A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief."  Id.

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."  Id.  When a petitioner raises different factual issues under the same legal theory he is required to present

3

each factual claim to the highest state court in order to exhaust his state remedies.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987).  He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim.  Pillette, 824 F.2d at 497-98.  The claims must be presented to the state courts as a matter of federal law.  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982); see also Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Moreover, the state court decision must rest primarily on federal law.  Coleman v. Thompson, 501 U.S. 722, 734-35 (1991).  If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review.  Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977).  However, the state court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue.  Smith v. Digmon, 434 U.S. 332 (1978) (per curiam); see also Baldwin v. Reese, 541 U.S. 27, 30-32 (2004) (a federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

4

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. Coleman, 501 U.S. at 752-53; Teague v. Lane, 489 U.S. 288, 297-99 (1989); Wainwright v. Sykes, 433 U.S. at 87-88; Rust, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. Teague, 489 U.S. at 297-99; Wainwright v. Sykes, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. Coleman, 501 U.S. at 752-53; Murray v. Carrier, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id.

The conduct of Lee's postconviction proceedings was governed by Tennessee's Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122. That act specifies types of procedural default that might bar a state court from reviewing the merits of a constitutional

5

claim.  A one-year statute of limitations governs the filing of petitions.  Id. at § 40-30-102.

The statute also enunciates a standard by which state courts are to determine whether to

consider the merits of post-conviction claims:

> Upon receipt of a petition in proper form, or upon receipt of an
> amended petition, the court shall examine the allegations of fact in the petition.
> If the facts alleged, taken as true, fail to show that the petitioner is entitled to
> relief or fail to show that the claims for relief have not been waived or
> previously determined, the petition shall be dismissed.  The order of dismissal
> shall set forth the court's conclusions of law.

Id. at § 40-30-106(f).[1]

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition

as barred by a procedural default caused by failing to file within the Tennessee statute of

limitations on postconviction relief.  Hannah v. Conley, 49 F.3d 1193, 1194-95 (6th Cir.

1995) (construing pre-1995 statute and stating "the language of Tenn. Code Ann. § 40-30-

102 is mandatory").  In this case, the prisoner's right to file any further state postconviction

petition is barred by the one-year statute of limitations; therefore, he does not have the option

of returning to state court to exhaust any claim presented in this § 2254 petition.

---

[1] Tenn. Code Ann. § 40-30-106 continues:

(g)  A ground for relief is waived if the petitioner personally or through an attorney failed to
present it for determination in any proceeding before a court of competent jurisdiction in
which the ground could have been presented unless:
    (1)  The claim for relief is based upon a constitutional right not recognized as
existing at the time of trial if either the federal or state constitution requires
retroactive application of that right; or
    (2)  The failure to present the ground was the result of state action in violation of the
federal or state constitution.
(h)  A ground for relief is previously determined if a court of competent jurisdiction has ruled
on the merits after a full and fair hearing.  A full and fair hearing has occurred where the
petitioner is afforded the opportunity to call witnesses and otherwise present evidence,
regardless of whether the petitioner actually introduced any evidence.

B.      Legal Standard for Merits Review

The standard for reviewing a habeas petitioner's constitutional claims on the merits

is enunciated in 28 U.S.C. § 2254(d).  That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
> (1)      resulted in a decision that was contrary to, or involved an unreasonable
>           application of, clearly established Federal law, as determined by the
>           Supreme Court of the United States;  or
> (2)      resulted in a decision that was based on an unreasonable determination
>           of the facts in light of the evidence presented in the State court
>           proceeding.

This Court must determine whether the state court adjudications of the claims that were

decided on the merits were either "contrary to" or an "unreasonable application of" "clearly

established" federal law as determined by the United States Supreme Court.  This Court must

also determine whether the state court decision with respect to each issue was based on an

unreasonable determination of the facts in light of the evidence presented in the state

proceeding.

1.      § 2254(d)(1)

The Supreme Court has issued a series of decisions setting forth the standards for

applying § 2254(d)(1).[2]  In (Terry) Williams v. Taylor, 529 U.S. 362, 404 (2000), the

Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses

should be accorded independent meaning.  A state court decision may be found to violate the

---

[2]  By contrast, there is a dearth of caselaw concerning the standards for applying § 2254(d)(2).

"contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established
> precedent if the state court applies a rule that contradicts the governing law set
> forth in our cases. . . . A state-court decision will also be contrary to this
> Court's clearly established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this Court and
> nevertheless arrives at a result different from our precedent.  Accordingly, in
> either of these two scenarios, a federal court will be unconstrained by
> § 2254(d)(1) because the state-court decision falls within that provision's
> "contrary to" clause.

Id. at 405-06 (citations omitted); see also Price v. Vincent, 538 U.S. 634, 640 (2003);

Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).[3]  The

Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that

"a run-of-the-mill state-court decision applying the correct legal rule from our cases to the

facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to'

clause."  Williams, 529 U.S. at 406; see also id. at 407 ("If a federal habeas court can, under

the 'contrary to' clause, issue the writ whenever it concludes that the state court's application

of clearly established federal law was incorrect, the 'unreasonable application' test becomes

a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the

state court correctly identifies the governing legal principle from [the Supreme Court's]

decisions but unreasonably applies it to the facts of the particular case."  Cone, 535 U.S. at

---

[3]  The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it
does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court
decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

694; see also Andrade, 538 U.S. at 75; Williams, 529 U.S. at 409.[4]  "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410.[5]  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 409.[6]

Moreover, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States."  This provision "expressly limits the source of law to cases decided by the United States Supreme Court."  Harris v. Stovall, 212 F.3d 940, 944 (6th Cir. 2000).  As the Sixth Circuit explained:

This provision marks a significant change from the previous language by

---

[4]  Although the Supreme Court in Williams recognized, in dicta, the possibility that a state court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," id. at 408.  The Williams Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," id. at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue.  See Williams v. Coyle, 260 F.3d 684, 699-700 (6th Cir. 2001).

[5]  See also Andrade, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); Cone, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."); Williams, 529 U.S. at 411 ("Under § 2254 (d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.").

[6]  See also Brown v. Payton, 125 S. Ct. 1432, 1442 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

      2.     § 2254(d)(2)

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In a decision applying this standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with 28 U.S.C. § 2254(e)(1), which provides that a state court's factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. Miller-El v. Dretke, 125 S. Ct. 2317, 2325 (2005).[7] It appears that the Supreme Court has, in effect, incorporated the standards applicable to the "unreasonable application" prong of

_____

[7] But cf. Rice v. Collins, 126 S. Ct. 969, 974 (2006) (recognizing that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable).

§ 2254(d)(1). Rice v. Collins, 126 S. Ct. 969, 976 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). That is consistent with the approach taken by the Sixth Circuit, which stated, in an unpublished decision, that

> a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

Young v. Hofbauer, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002) (citing 28 U.S.C. § 2254(e)(1));[8] see also Stanley v. Lazaroff, 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); Jackson v. Holland, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21, 2003) ("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in Williams, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

IV.   ANALYSIS OF PETITIONER'S CLAIMS

A.   The alleged racial imbalance in the jury venire (Claim 1)

In his first claim for relief, Lee contends that the jury venire was unconstitutionally

---

[8] See also Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying presumption of correctness to factual determinations of state appellate courts).

11

impaneled by failing to include adequate numbers of African-Americans.  Lee raised this

issue on direct appeal, where the Tennessee Court of Criminal Appeals rejected it on the

merits:

> The defendant in this cause is of African-American descent.  Prior to commencement of voir dire examination, the defendant's counsel, at a bench conference, addressed the court as follows:
>
>> Counsel:      Your Honor, I wanted to make an objection on the record to the jury pool.  There's only one minority in the entire pool.
>> The Court:    Okay.  Thank you.
>
> Subsequent to the trial at the motion for judgment of acquittal and motion for new trial, defense counsel introduced U.S. Census data of 2000 for Obion County.  It reflected that African-Americans' percentage in the Obion County population was 9.8%.  The prosecutor stipulated that the jury pool at trial consisted of approximately forty-five to fifty individuals.  However, the prosecutor did not agree that only one African-American was in the entire jury pool.
>
> The Circuit Court Clerk testified that the jury panel is randomly selected from Obion County licensed drivers, utilizing a computer software program.  Approximately 150-160 names are thus selected and submitted to the jury commissioners for Obion County.  The commissioners delete the names of individuals who are ineligible or unable to serve for reasons such as being deceased, ex-residents, or known invalids.  Those individuals remaining constitute the jury venire.
>
> In overruling the defendant's motion for a new trial and/or judgment of acquittal, the trial judge found that the defendant had failed to prove:  (1) that the group's representation and the source from which the juries are selected are not fair and reasonable in relation to the number of the group in the community; and (2) that underrepresentation results from systematic exclusion of the group in the jury selection process.  The trial judge further observed:
>
>> Although there was only one black person in the jury venire on the day the defendant was tried, there is no evidence before the Court as to the number of other black jurors, if any, that were in this jury pool.  Furthermore, the defendant has failed to show

there was systematic exclusion of black people in the jury selection process in Obion County.

Under the Sixth Amendment and the Due Process Clause, "juries must be drawn from a source fairly representative of the community." Taylor v. Louisiana, 419 U.S. 522, 538 . . . (1975); State v. Nelson, 603 S.W.2d 158, 161 (Tenn. Crim. App. 1980). The United States Supreme Court has developed a three-part test describing the burden of a defendant alleging exclusion of a group:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 . . . (1979); State v. Nelson, 603 S.W.2d at 161.

Petit juries, as actually chosen, are not required to mirror the community, and a defendant is not entitled to a jury of any particular composition. Taylor v. Louisiana, 419 U.S. at 538 . . . .

From our review of the record, we believe that the evidence supports the trial court's finding that the defendant has failed to make a prima facie case of systematic exclusion of African-American jurors. Although there was only one African-American juror in the prospective jury panel at trial, the record is devoid as to the number of African-Americans in the complete venire. Furthermore, the defendant has failed to prove that the method of selection results in an exclusion of African-Americans or that underrepresentation is systematic. One panel of jurors which is underrepresented by African-Americans does not, by itself, prove systematic exclusion.

State v. Lee, 2004 WL 1813223, at *1-*2 (parallel citations omitted).

An analysis of this issue is complicated because Lee has not referred to the legal standards for reviewing habeas claims on the merits. See supra pp. 7-12. Lee does not

13

explain why the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  This is "a run-of-the-mill state-court decision applying the correct legal rule from [Taylor v. Louisiana and Duren v. Missouri] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Lee contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Taylor v. Louisiana and Duren v. Missouri.  Although it can be inferred that Lee disagrees with the state court's decision, his legal memorandum does not analyze the particular deficiencies in the decision in light of Taylor and Duren.  Moreover, Lee makes no effort to demonstrate that the state court decision is objectively unreasonable, rather than merely incorrect.  Williams, 529 U.S. at 410; see also supra p. 9 & n.5.  The Tennessee Court of Criminal Appeals cited the correct legal standard, see supra p. 13-14, and then applied that standard to the arguments raised by Lee about the asserted absence of African-Americans from his jury pool, see id.

Lee presumably contends that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, 28 U.S.C. § 2254(d)(2), although he does not cite that provision or explicitly address the state court's factual findings.  Instead, Lee states as follows:

In the present case, the Petitioner is an African American and was tried

14

by a jury of Caucasians and had a jury venire consisting of only one (1) African-American who was excused from the jury immediately. The Petitioner meets all three prongs that have been set to establish a prima facie case. The first prong is established in that the Petitioner is an African-American and prior Court decisions have held that this group is a distinctive group in the community. African-Americans makes [sic] up a large portion of the population of the United States and there can be no other holding. The Second prong of the test is established in that the representation of this group in the venire was not fair and reasonable in relation to the number of such persons in the community. The 2000 census for Obion County shows that African-Americans makes [sic] makes up 9.8% of the population. There were approximately fifty prospective jurors in the jury venire but only one African-American. Simple math shows that there should have been a minimum of five African-Americans in the venire. The third prong is satisfied in that there is a systematic exclusion of minorities in Obion County. This exclusion does not have to be intentional, but simply have that result of exclusion. The manner in which the jury venire is selected is not the issue it is simply the result that you get from the process of selection. A small number of no African-Americans in the jury venire have become a common occurrence in Obion County and was no surprise to the trial court. During the motion for New Trial hearing, the Court when questioning counsel as to whether there was only one minority in the entire jury pool made the following statement, "I'm not surprised by that, okay, that—one person in the whole pool.["]

Brief of the Petitioner, filed Mar. 21, 2006 ("P. Br."), at 8-9.

Lee's brief, which relies solely on the presence of a single African-American in the fifty-member panel of prospective jurors and the comment of the trial judge that he was "not surprised" by that fact, does not address the state court's factual finding that "the defendant has failed to make a prima facie case of systematic exclusion of African American jurors." State v. Lee, 2004 WL 1813223, at *2. The Tennessee Court of Criminal Appeals further observed that "the record is devoid as to the number of African-Americans in the complete venire" and "the defendant has failed to prove that the method of selection results in an exclusion of African-Americans or that underrepresentation is systematic. One panel of

jurors which is underrepresented by African-Americans does not, by itself, prove systematic exclusion." Id. (emphasis added). Lee appears to assume, incorrectly, that every criminal defendant is entitled to a racially balanced petit jury, and he further assumes that racial imbalance on a single panel of prospective jurors necessarily means that there has been systematic exclusion. Accordingly, Lee has not satisfied his burden of demonstrating, by clear and convincing evidence, that the state court's rejection of his contention that the jury venire was unconstitutionally empaneled due to a lack of inadequate representation of African-Americans was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing. Therefore, petitioner is not entitled to relief on his first claim.

B.    Ineffective assistance of counsel (Claim 2)

In his second claim for relief, Lee contends that he received ineffective assistance of counsel, in violation of the Sixth Amendment. In particular, Lee contends that his attorney failed to interview any witnesses on his behalf and failed to investigate the facts of the case.

Lee raised a claim of ineffective assistance in his postconviction petition, and the following facts relevant to that claim were set forth in the opinion of the Tennessee Court of Criminal Appeals:

Following an evidentiary hearing, the post-conviction court entered the following findings of fact:

The petitioner, Bobby Lee, was indicted in the Criminal Court of Obion County . . . , Tennessee in October of 2001, for the crime of criminal conspiracy to commit first degree murder, criminal attempt to commit first degree murder and aggravated assault. The indictment

16

resulted from the shooting of one Terry Scates, which occurred on September 19, 2001.  According to the evidence presented at the trial, the petitioner shot Mr. Scates several times with a sawed off 12 gauge shotgun.  Miraculously, Scates lived.

The case was tried on September 29, 2003, and the jury found the petitioner guilty of attempt to commit first degree murder and aggravated assault[, which were later merged].  The petitioner was sentenced as a career offender to 60 years in the Tennessee Department of Correction[].

. . . .

The case was appealed to the Court of Criminal Appeals upon the sole issue that the jury venire was unconstitutionally empaneled due to a lack of adequate representation of African Americans.  The appeal was denied.  [State v. Bobby Lee, No. W2003-02948-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 11, 2004)].

On November 2, 2004, the Appellant filed a *pro se* petition for post-conviction relief alleging numerous grounds for relief, including ineffective assistance of counsel.  As requested, counsel was appointed, and a hearing was held on January 5, 2005, at which trial counsel and the Appellant were called as the only witnesses.  The Appellant testified that during pretrial discussions with trial counsel, he asked counsel to subpoena two or three witnesses who would testify favorably for him.  He stated that one witness would have testified that the victim was looking for the Appellant with a ball bat and another witness would have testified that the victim had a butcher knife prior to the shooting.  However, trial counsel testified that the Appellant never provided the names of any witnesses to be called at trial. Counsel stated that his investigation revealed that the Appellant and the victim had a confrontation and that the Appellant, while displaying a shotgun, proclaimed in the presence of six witnesses that he intended to "get" the victim.  All six witnesses saw the Appellant leave in pursuit of the victim. Trial counsel acknowledged that he was limited in presenting a viable defense based on the Appellant's nineteen prior felony convictions.  After hearing the proof presented, the post-conviction court determined that all grounds, except ineffective assistance of counsel, had been waived or previously determined. The court further found that the ineffective assistance claim was without merit and dismissed the petition by written order on January 10, 2005.  This appeal followed.

Lee v. State, 2005 WL 2464680, at *1 (omissions and alterations in original).

A claim that ineffective assistance of counsel has deprived a habeas petitioner of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1998) ("The specifics of what Coe claims an effective lawyer would have done for him are too

18

voluminous to detail here.  They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss.  That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness.  See Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992).  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  See id. at 697.

The Tennessee Court of Criminal Appeals rejected Lee's claim that his attorney rendered ineffective assistance by failing to investigate his case and interview witnesses, explaining as follows:

> The Appellant's only assertion on appeal is that counsel was ineffective for failing to call two or more witnesses, who he contends would have assisted in his defense.  In denying relief, the post-conviction court concluded:
>
> > The petitioner testified that there was a witness who would have testified that the victim had a baseball bat and that there was another witness who would have testified that the victim had a butcher knife. He said he told his attorney about these witnesses.  This testimony was refuted by [trial counsel].  The Court finds that the testimony of [trial

counsel] is credible and the testimony of the petitioner is not. The Court also notes that these alleged witnesses were not present at the post-conviction hearing to testify.

We find nothing in the record to preponderate against the post-conviction court's findings. Questions concerning the credibility of witnesses, the weight and value given to their testimony, and the factual issues raised by the evidence are to be resolved by the trier of fact. . . . We will not reweigh or reevaluate the evidence or substitute our inferences for those drawn by the postconviction court. . . .

Moreover, the Appellant's argument must also fail because he failed to present any proof at the post-conviction hearing, other than his own bare assertions, as to what the alleged witnesses would have testified to had they been called at trial. When a petitioner claims that trial counsel failed to interview or present a witness in support of his defense, the Appellant should present that witness at his evidentiary hearing. . . . The Appellant acknowledges his failure to present witnesses but asserts that his failure should be excused because he offered testimony regarding the substance of what the witnesses' testimony would have been. The argument is misplaced. We cannot rely upon the Appellant's own self-serving statements. Because the Appellant failed to produce the witnesses, it would be speculative to conclude that their testimony would have affected the outcome of the trial. Thus, the Appellant's allegation of ineffective assistance of counsel falls short of clear and convincing evidence. This issue is without merit.

Lee v. State, 2005 WL 2464680, at *2-*3 (citations omitted).

As with the previous issue, the petitioner does not advance any argument why the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Strickland v. Washington] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Lee contends that the decision of the Tennessee Court of

Criminal Appeals was an unreasonable application of <u>Strickland</u>.  In his brief, Lee does not

mention the opinion of the Tennessee Court of Criminal Appeals, does not identify the

witnesses he contends should have been called to testify in his behalf, does not describe the

testimony he contends they would have provided, and does not explain his failure to call

them to testify at the postconviction hearing.  As he does not address the state court decision,

it necessarily follows that he has not attempted to demonstrate that the state court decision

is objectively unreasonable, rather than merely incorrect.  <u>Williams</u>, 529 U.S. at 410; <u>see also</u>

*supra* p. 9 & n.5.

Lee also does not address whether the decision of the Tennessee Court of Criminal

Appeals was based on an unreasonable determination of the facts in light of the evidence

presented at the state court hearing.  28 U.S.C. § 2254(d)(2).  Even if his argument can be

construed as relying on that provision, the petitioner fails to demonstrate that the factual

findings of the Tennessee Court of Criminal Appeals were objectively unreasonable.  Lee did

not introduce at the postconviction hearing the testimony of the witnesses he contends should

have been called to testify on his behalf at trial, and the Tennessee Court of Criminal Appeals

concluded that it would be improper to rely on his "self-serving" testimony as to what the

substance of that testimony would have been.  Lee does not address this aspect of the state

court decision; therefore, he has not satisfied his burden of demonstrating, by clear and

convincing evidence, that the state court's decision that he had failed to establish deficient

performance and prejudice, within the meaning of <u>Strickland</u>, was based on an unreasonable

determination of the facts in light of the evidence presented at the state court hearing.

Therefore, petitioner also is not entitled to relief on claim 2.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Rules Governing § 2254 Cases. Accordingly, the petition is DISMISSED.

## V.    APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA").

The statute provides:

(1)    Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)    the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)    the final order in a proceeding under section 2255.

(2)    A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)    The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that

22

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed.  Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief.  The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail.  It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.  After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893).  Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA:  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[9]

_____

[9]  By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue."  Miller-El, 537 U.S. at 337.  Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not."  Id.

In this case, there can be no question that any appeal by this petitioner on any of the issues raised in this petition does not deserve attention for the reasons previously stated. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917,[10] the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith. Leave to appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file

---

[10] The appellate filing fee was increased to $455 effective April 9, 2006.

24

a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of

Appeals within 30 days.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

25